UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

JANET MARIE DAVIS                     CIVIL ACTION NO. 6:14-cv-02300

VERSUS                                JUDGE DOHERTY

U.S. COMMISSIONER,                    MAGISTRATE JUDGE HANNA
SOCIAL SECURITY
ADMINISTRATION

## REPORT  AND  RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be reversed and remanded

for further administrative action.

### ADMINISTRATIVE  PROCEEDINGS

The claimant, Janet Marie Davis, fully exhausted her administrative remedies

before filing this action in federal court.   The claimant filed an application for

supplemental security income benefits ("SSI"), alleging disability beginning on

September 1, 2006.[1]  Her application was denied.[2]  The claimant requested a hearing,[3]

which was held on March 14, 2013 before Administrative Law Judge W. Thomas

---

[1]      Rec. Doc. 11-1 at 110.

[2]      Rec. Doc. 11-1 at 48.

[3]      Rec. Doc. 11-1 at 63.

Bundy.[4]  The ALJ issued a decision on April 5, 2013,[5] concluding that the claimant was not disabled within the meaning of the Social Security Act ("the Act") from July 28, 2011 through the date of the decision.  The claimant asked for review of the decision, but the Appeals Council concluded on May 12, 2014 that no basis existed for review of the ALJ's decision.[6]  Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g).   The claimant then filed this action seeking review of the Commissioner's decision.

## SUMMARY OF PERTINENT FACTS

The claimant was born on September 17, 1967.[7]  At the time of the ALJ's decision, she was forty-six years old.  She has a tenth grade education,[8] and past relevant work experience as a housekeeper in hotels and nursing homes, as a hotel desk clerk, and as a cosmetics sales person.[9]  She alleges that she has been disabled

---

[4]       The hearing transcript is found at Rec. Doc. 11-1 at 31-47.

[5]       Rec. Doc. 11-1 at 16-24.

[6]       Rec. Doc. 11-1 at 5.

[7]       Rec. Doc. 11-1 at 110.

[8]       Rec. Doc. 11-1 at 145.

[9]       Rec. Doc. 11-1 at 145, 150, 177.

-2-

since September 1, 2006[10] due to neck and back pain, leg problems, anxiety, depression, and insomnia.[11]

The record indicates that the claimant was involved in a slip-and-fall or slip-and-twist accident at a Walgreen's store in 2006.  She claims to have experienced neck, back, and knee pain thereafter.  The alleged disability onset date seems to coordinate with the alleged accident date.

At some point after the accident occurred, the claimant began treating with Dr. Louis Blanda, an orthopedic surgeon.  On June 25, 2007, the claimant underwent an MRI of the cervical spine[12] and an MRI of the lumbar spine,[13] ordered by Dr. Blanda. The MRI showed multilevel degenerative changes in the cervical spine, with a cervical syrinx at the C6-7 level.  The MRI of the lumbar spine showed degenerative changes at L5-S1.

The claimant was seen at the emergency room of Lafayette General Medical Center in Lafayette, Louisiana on June 18, 2009, complaining of chronic back pain.[14]

---

[10]     Rec. Doc. 11-1 at 110.

[11]     Rec. Doc. 11-1 at 144.

[12]     Rec. Doc. 11-1 at 326-327.

[13]     Rec. Doc. 11-1 at 328-329.

[14]     Rec. Doc. 11-1 at 208-211.

She was prescribed pain medication and a muscle relaxer and advised to visit her doctor for follow-up care.

On July 14, 2009,[15] the claimant saw Dr. Blanda.  She was upset and crying and complained of an increase in neck and back pain as well as depression.  He noted her history of a cervical and lumbar disk injury; his examination showed neck spasm and back pain; and he noted that the claimant complained of bilateral foot numbness.  According to Dr. Blanda's notes, the claimant had previously taken Cymbalta but had voluntarily stopped taking it.  She told him that Lortab and Soma help her pain but Xanax does not help her sleep.  He changed her Xanax prescription and made her an appointment to see Dr. Friedberg, a psychologist.  There is no evidence in the record, however, that the claimant ever saw Dr. Friedberg.

On December 20, 2009, the claimant was seen in the emergency department of University Medical Center ("UMC") in Lafayette, Louisiana,[16] complaining of chronic back pain stemming from a September 2009 accident.  She was given a Torodol injection and advised to continue taking the medications prescribed by Dr. Blanda.

---

[15]      Rec. Doc. 11-1 at 213.

[16]      Rec. Doc. 11-1 at 274-279.

A January 8, 2010 MRI of the lumbar spine showed foraminal stenosis on the left at L5-S1, partially impinging the exiting left L5 nerve root.[17]

The claimant saw Dr. Blanda on January 14, 2010, and his treatment note indicates that she will be requesting a referral to University Medical Center in Shreveport, Louisiana for surgery.[18]

On January 21, 2010,[19] the claimant was seen in the emergency department at UMC to receive the results of her MRI.  She was referred to the neurology clinic at UMC in Shreveport.

The claimant followed up with Dr. Blanda on July 27, 2010.[20]  She reported that her appointment in Shreveport had been canceled for unknown reasons.  She complained of continued bilateral leg pain but indicated that her medications were helping.  She had negative straight leg raise tests bilaterally, her deep tendon reflexes were hyper at the right knee but normal elsewhere, and she had slight weakness in the right lower extremity.

---

[17]     Rec. Doc. 11-1 at 306.

[18]     Rec. Doc. 11-1 at 214.

[19]     Rec. Doc. 11-1 at 266-271, 304-305.

[20]     Rec. Doc. 11-1 at 221.

The claimant saw Dr. Jennifer Hargett of Southern Medical Group, Inc. on August 21, 2010 at the request of Disability Determination Services.[21]  Dr. Hargett noted the claimant's history of depression, anxiety, and neck and back problems but stated that they were well controlled on medication.  She noted that the claimant's back pain is constant, radiates down the left leg, and makes the leg feel heavy and have less sensation.  The claimant reported that she had been scheduled for surgery in Shreveport, which was canceled by the neurosurgeon and had not been rescheduled.  She reported morning stiffness and worse pain in the morning as well as weakness and occasional trips and falls.  She reported muscle spasms in her neck and occasionally dropping items.  She was taking Soma, Lortab, and Xanax.  Dr. Hargett found that the claimant could ambulate without assistance, had no muscle asymmetry, atrophy, or involuntary movements, no swelling or tenderness, that her gait and station were normal, that she could rise from a sitting position without assistance, could stand on tiptoes, heel and toe walk without trouble, and could bend and squat without difficulty.  Her strength was 4/5 on the left and 5/5 on the right, She had no abnormal reflexes.  Spinal x-rays were normal.  Her range of motion was normal in all joints.  Dr. Hargett concluded that "I believe the claimant should be able to sit, walk, and/or stand for a full workday, lift/carry objects without limitations,

---

[21]     Rec. Doc. 11-1 at 216-219.

hold a conversation, respond appropriately to questions, carry out and remember instructions."

The claimant returned to Dr. Blanda on May 5, 2011 and reported "no real change in her symptoms."[22] She also had vague complaints of bilateral knee pain, but the straight leg raising test was negative bilaterally and she had equal lower extremity strength bilaterally, and the deep tendon reflexes of her knees were normal. Dr. Blanda refilled her medications and added Mobic to her regimen. Dr. Blanda also placed her on no work status.

On June 14, 2011,[23] the claimant was evaluated at the Dr. Joseph Henry Tyler, Jr. Mental Health Center in Lafayette, Louisiana. She reported that she was suffering with depression and was distressed due to financial problems and constant pain since her slip and twist accident in a store in 2006. She reported a depressed mood, crying spells, poor energy, sleep disturbance, and feeling worried and panicky. She was diagnosed with major depressive disorder – recurrent; anxiety disorder, not otherwise specified; and chronic pain. A current GAF score of 50 was assigned, indicating serious symptoms.[24] The physician evaluating the claimant found that she was

---

[22]     Rec. Doc. 11-1 at 222.

[23]     Rec. Doc. 11-1 at 231.

[24]     Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM–IV") at 32.

gravely disabled, noting that she had a serious impairment in function in a major life role and met the criteria for admission to the clinic.   Zoloft and Vistaril were prescribed.[25]

The claimant was counseled at the Tyler Center on July 6, 2011, when she reported that she was feeling better on medication.[26]   She returned for counseling on August 18, 2011[27] and on October 11, 2011, when she reported a decrease in depression symptoms.[28]   On November 9, 2011, she again reported an improvement in her symptoms.[29]   On November 21, 2011, she reported severe back pain and discussed nightmares and not wanting to be alone in her home due to a prior break-in by a former boyfriend.

The claimant was seen by Dr. Scott Chapman on November 2, 2011 at the request of Disability Determination Services.[30]   She told Dr. Chapman that she had a tenth grade education, was divorced, lived alone, and had last worked in 2011.  The

---

[25]      Rec. Doc. 11-1 at 225.  Over the course of her treatment at the Tyler Center, the claimant's medications were adjusted, and different medications were prescribed.

[26]      Rec. Doc. 11-1 at 230.

[27]      Rec. Doc. 11-1 at 228.

[28]      Rec. Doc. 11-1 at 316.

[29]      Rec. Doc. 11-1 at 315.

[30]      Rec. Doc. 11-1 at 253-259.

claimant told Dr. Chapman that her back problems began with a slip and twist accident in 2006.  When her condition did not improve with physical therapy, she saw a spine specialist, Dr. Blanda.  He obtained an MRI that showed degenerative disc disease with nerve root impingement.  Surgery was recommended but, because of financial concerns, she did not have the surgery.  The claimant told Dr. Chapman that she currently had a stabbing pain to her lower back that radiated down the left buttock as well as tightness in the upper part of her neck that caused frequent headaches.  She reported that left knee pain began with the accident, and that right knee pain began several years later, but she stated that neither knee had been medically evaluated.  The claimant also told Dr. Chapman that she had experienced anxiety and depression since the accident, which worsened in March 2011, and is accompanied by insomnia. At the time of her evaluation by Dr. Chapman, the claimant was being seen at Tyler Mental Health on a monthly basis and was taking medications for her mental health conditions.

Dr. Chapman's examination revealed moderate tenderness to palpation over the left upper cervical paraspinal muscle groups; moderate medial joint line tenderness to palpation of the left knee together with patellar shifting on range of motion testing but no laxity in the joint; mild patellar shift with range of motion testing in the right knee; and severe tenderness to palpation over the left sciatic tract.  She could heel and

-9-

toe walk but it was painful.  Her mood was noted to be moderately depressed, and she became teary-eyed several times during the interview.

An x-ray of the cervical spine revealed loss of the normal cervical curvature, moderate spondylosis at C3 through C5, with decreased disc height; degenerative changes at C1-C2; and decreased disc height, endplate degenerative changes, and facet degeneration at L5-S1.  X-rays of both knees were normal.

Dr. Chapman's impressions were chronic lumbar and cervical spine pain, bilateral knee pain, anxiety, and depression.  He found severe left-sided sciatica.  He recommended that the claimant continue with her mental health treatment and that she have both her spine and knee complaints medically evaluated to see if any treatment options might help to reduce her symptoms.

The claimant returned to Dr. Blanda on December 15, 2011.[31]  She reported increasing left knee pain, which she attributed to the 2006 accident.   Dr. Blanda refilled her medicines.

On January 23, 2012, the claimant was examined by clinical psychologist M. Lucy Freeman in connection with her disability claim.[32]  The claimant gave a history including quitting school in tenth grade when she became pregnant, having held a job

---

[31]     Rec. Doc. 11-1 at 290.

[32]     Rec. Doc. 11-1 at 282-285.

no longer than two years, and having multiple criminal convictions. She reported that she enjoyed working as a Mary Kay make-up consultant but could no longer do the work because of the bending, lifting, and getting in and out of the car that was required. The claimant told Dr. Freeman that her pain began with the slip and fall in Walgreen's in 2006. She also reported receiving treatment at Tyler Mental Health due to depression. During the testing, the claimant broke down and sobbed. At that time she was taking Zoloft, Hydrocodone, Carisoprodol, Vistaril, Alprazolam, and Oxycodone. Dr. Freeman observed that the claimant had trouble transitioning from standing to sitting. Dr. Freeman diagnosed the claimant with pain disorder associated with both psychological factors (depression) and a general medical condition, as well as antisocial personality disorder. She assigned a GAF score of 65, which denotes mild symptoms.[33] Dr. Freeman stated that the claimant likely has moderate limitations in her activities of daily life and with social interactions.

On February 23, 2012,[34] the claimant was seen in the emergency room at UMC for a psychological evaluation following discharge from a mental hospital. The clinical impressions were suicidal/homicidal ideations, depression, and psychosis, acute.

---

[33]     DSM–IV at 32.

[34]     Rec. Doc. 11-1 at 294-303.

On March 22, 2012,[35] the claimant was again evaluated at the Tyler Center and diagnosed with schizoaffective disorder, bipolar type, as well as cervical, thoracic, and lumbar spine pathology with chronic pain.  A GAF score of 55 was assigned, which indicates moderate symptoms.[36]

On May 12, 2012, the claimant was seen at the emergency room of Lafayette General Hospital, complaining of a severe headache that never went away.[37]  A CT scan of her brain was negative.  She was diagnosed with a tension headache, prescribed Voltaren, and discharged.

The claimant again saw Dr. Blanda on June 7, 2012.[38]  She complained of frequent headache pain.  Dr. Blanda stated that she needed a repeat MRI of her low back, but she could not afford it.  Examination revealed a positive McMurray's sign in the left knee medially, which indicates a tear in the lateral meniscus.  Dr. Blanda offered a cortisone injection for her knee, but the claimant could not afford it.  She was prescribed a Medrol dose pack and her other medications were refilled.

---

[35]     Rec. Doc. 11-1 at 309-310.

[36]     DSM–IV at 32.

[37]     Rec. Doc. 11-1 at 320-324.

[38]     Rec. Doc. 11-1 at

-12-

The claimant was again counseled a the Tyler Center on September 10, 2012,[39] when she stated that although she had good days and bad days, her depression was generally not as bad as it had been.

The claimant visited the emergency room at Our Lady of Lourdes Regional Medical Center in Lafayette, Louisiana on October 4, 2012, complaining of left hip pain radiating down her left leg.[40]  She denied any recent trauma.  She was given injections of Decadron and Toradol, diagnosed with low back pain, and released.

On October 24, 2012, the claimant was seen at the emergency department of UMC, complaining of generalized abdominal pain.[41]  She was diagnosed with a urinary tract infection and gastroesophageal reflux disease ("GERD").  Medication was prescribed.  On November 29, 2012, she was seen at the internal medicine clinic at UMC.[42]  She gave a history of having been diagnosed with a urinary tract infection and H. pylori as well as chronic pain.  "Triple therapy" was started.

On January 29, 2013, the claimant was evaluated by a social worker at the Tyler Behavioral Health Center.[43]  Her chief complaint was that she was depressed

---

[39]     Rec. Doc. 11-1 at 356.

[40]     Rec. Doc. 11-1 at 333-336.

[41]     Rec. Doc. 11-1 at 341-347.

[42]     Rec. Doc. 11-1 at 338-340.

[43]     Rec. Doc. 11-1 at 349-352.

from her bad back.  Her history indicated that she was previously seen at Tyler for depression and generalized anxiety and that she was previously hospitalized for psychiatric treatment.  She was diagnosed with schizoaffective disorder and assigned a current GAF score of 50, which indicates serious symptoms.[44]

On February 28, 2013, the claimant was taking Lortab for pain, Risperdal for mental/mood disorders, Soma to relax her muscles, Trileptal for seizure disorders, Xanax for anxiety, Traxodone for depression, and Prozac for depression, as well as Aleve for headaches.[45]

**ANALYSIS**

**A.    STANDARD OF REVIEW**

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[46]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as

---

[44]     DSM–IV at 32.

[45]     Rec. Doc. 11-1 at 205.

[46]     *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

a reasonable mind might accept as adequate to support a conclusion."[47]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[48]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[49]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[50]  Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts.[51]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination:  (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3)

---

[47]     *Villa v. Sullivan*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[48]     *Hames v. Heckler*, 707 F.2d at 164 (quoting *Hemphill v. Weinberger*, 483 F.2d 1137. 1139 (5th Cir. 1973), and *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973)).

[49]     42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[50]     *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1021; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d at 135; *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

[51]     *Martinez v. Chater*, 64 F.3d at 174.

the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[52]

## B.      Entitlement to Benefits

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits.[53]

The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[54]   A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant

---

[52]      *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991); *Martinez v. Chater*, 64 F.3d at 174.

[53]      42 U.S.C. § 1382(a)(1) & (2).

[54]      42 U.S.C. § 1382c(a)(3)(A).

-16-

lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[55]

## C.   <u>Evaluation Process and Burden of Proof</u>

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  This process requires the ALJ to determine whether a claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work she did in the past; and (5) can perform any other work.[56] "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis."[57]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[58] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the

---

[55]      42 U.S.C. § 1382c(a)(3)(B).

[56]      20 C.F.R. § 404.1520; see, e.g., *Wren v. Sullivan*, 925 F.2d at 125; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[57]      *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

[58]      20 C.F.R. § 404.1520(a)(4).

-17-

record.[59]  The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[60]

The claimant bears the burden of proof on the first four steps.[61]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[62]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[63]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[64]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[65]

---

[59]      20 C.F.R. § 404.1545(a)(1).

[60]      20 C.F.R. § 404.1520(e).

[61]      *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[62]      *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[63]      *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

[64]      *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[65]      *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992), citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

-18-

D.    **THE ALJ'S FINDINGS AND CONCLUSIONS**

In this case, the ALJ determined, at step one, that the claimant has not engaged in substantial gainful activity since July 28, 2011.[66]  This finding is supported by the evidence in the record.

At step two, the ALJ found that the claimant has the following severe impairments:  degenerative disc disease, obesity, and depression.[67]  This finding is supported by evidence in the record.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment.[68]  The claimant challenges this finding.

The ALJ then found that the claimant has the residual functional capacity to perform light work but with no climbing of ladders or scaffolds; occasional climbing of ramps or stairs, stooping, kneeling, crouching, or crawling; and no more than frequent balancing.[69]  Due to the claimant's depression, the ALJ also limited her to

---

[66]    Rec. Doc. 11-1 at 18.

[67]    Rec. Doc. 11-1 at 18.

[68]    Rec. Doc. 11-1 at 18.

[69]    Rec. Doc. 11-1 at 20.

simple, routine tasks, with little contact with the general public.[70]  The claimant

challenges this finding.

At step four, the ALJ found that the claimant is capable of performing her past

relevant work in clerical work and retail sales.[71]

At step five, the ALJ found that the claimant was not disabled from July 28,

2011 through April 5, 2013 (the date of the decision) because there are jobs in the

national economy that she can perform.[72]  The claimant challenges this finding.

## E.   THE ALLEGATIONS OF ERROR

The claimant argues that the ALJ erred in (1) failing to evaluate the combined

effect of all of her impairments, (2) failing to properly evaluate her pain complaints,

and (3) failing to properly evaluate her residual functional capacity.

## F.   THE COMBINED EFFECT OF THE CLAIMANT'S IMPAIRMENTS

The claimant argues that the ALJ failed to properly evaluate the combined

effect of all of her impairments.  In making a determination as to disability, the ALJ

must analyze both the disabling effect of each of the claimant's ailments and also the

---

[70]     Rec. Doc. 11-1 at 20.

[71]     Rec. Doc. 11-1 at 22.

[72]     Rec. Doc. 11-1 at 23-24.

combined effect of all of the claimant's impairments.[73]  The Fifth Circuit has held that a specific statement from the ALJ showing that the ALJ has considered the impairments singly and in combination is sufficient to affirm the ALJ's decision when a review of the evidence shows substantial evidence to support the ALJ's decision.[74]

In this case, the ALJ stated, in determining that the claimant does not have an impairment or a combination of impairments that meets a listing, that he considered "the criteria of Section 1.00, et seq., in general of the Listing of Impairments." (Rec. Doc. 11-1 at 18.).  The ALJ then went into a detailed review of the criteria of Listings 12.04 and 12.06, which are listings for mental disorders, and compared the claimant's symptoms and medical findings against those criteria.  However, the ALJ did not compare any of the claimant's alleged physical impairments against the criteria for any particular listing.  Even though the ALJ found that the claimant has severe degenerative disc disease, he did not mention any listings for musculoskeletal or neurological impairments that might be relevant to degenerative disc disease, nor did he compare the claimant's well-documented neck, back, and knee complaints to the criteria for any listing.  More particularly, the ALJ did not consider whether the nerve root impingement at L5, which was diagnosed by an MRI of the lumbar spine

---

[73]     *Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987).

[74]     *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985).

-21-

performed on January 8, 2010 at UMC,[75] or the cervical syrinx at the C6-7 level, which was diagnosed by MRI on June 25, 2007,[76] meet the criteria for a listing.  An "ALJ is required to discuss the evidence and explain the basis for his findings at each unfavorable step of the sequential evaluation process."[77]  This means "[t]he ALJ should identify the listed impairment for which the claimant's symptoms fail to qualify and provide an explanation as to how he or she determined that the symptoms are insufficiently severe to meet any listed impairment."[78]  Because the ALJ did not specifically address the claimant's alleged physical disorders and how they did or did not meet a listing, the ALJ erred.

When determining whether a claimant's impairments are severe, an ALJ is also required to consider the combined effects of all physical and mental impairments regardless of whether any impairment, considered alone, would be of sufficient severity to meet a listing.[79]  If the ALJ does find a medically severe combination of impairments, "the combined impact of the impairments will be considered throughout

---

[75]     Rec. Doc. 11-1 at 306.

[76]     Rec. Doc. 11-1 at 326-327.

[77]     *Williams v. Astrue*, No. 09-0130, 2010 WL 989216, at * 3 (W.D. La. Mar. 15, 2010), citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007), which in turn cites 42 U.S.C. § 405(b)(1).

[78]     *Savoie v. Colvin*, No. 14-30-JJB-RLB, 2015 WL 1004217, at *5 (M.D. La. Mar. 5, 2015).

[79]     *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir.2000), citing 20 C.F.R. § 404.1523.

the disability determination process."[80]  Although the ALJ stated, in this case, that the claimant had no combination of impairments that meet or medically equal a listing, the ALJ's ruling does not explain how he reached that conclusion.  Significantly, the ALJ did not discuss the combined effect of the claimant's alleged physical impairments and her alleged mental impairments.  There is no indication that the ALJ considered whether the claimant's physical impairments – her obesity and her neck, low back, and knee impairments – meet or equal a listing when they are combined with her alleged mental impairments.  Therefore, the ALJ erred in evaluating the severity of the claimant's alleged impairments.

The ALJ made a similar error when he evaluated the claimant's residual functional capacity.  In his ruling, the ALJ addressed only the claimant's alleged physical impairments when assessing the claimant's residual functional capacity and did not mention her alleged mental impairments.  More particularly, the ALJ said that he "has considered the combination of impairments, particularly her back and knee complaints combined with obesity, in determining his [sic] residual functional capacity."  (Rec. Doc. 11-1 at 22).  There is no indication, however, that the ALJ considered whether the claimant's physical impairments – her obesity and her neck, low back, and knee impairments – are disabling when they are combined with her

---

[80]     20 C.F.R. § 404.1523.

alleged mental impairments.  In analyzing a person's residual functional capacity, the ALJ must consider the limiting effects of an individual's impairments, even those that are non-severe, and any related symptoms based on all of the evidence in the record.[81] The combined effect of various impairments on a person's functionality must, therefore, be considered.

In this case it appears that, when evaluating the severity of the claimant's impairments, the ALJ considered only individual impairments and concentrated on the claimant's alleged mental impairments to the exclusion of any meaningful discussion of her alleged physical impairments but, when expressly addressing the claimant's residual functional capacity, the ALJ concentrated on her alleged physical impairments – including the combination of her back and knee complaints with her obesity – but failed to consider the combination of her alleged mental impairments along with her alleged physical impairment.  This was error, resulting in a residual functional capacity evaluation that was not reached by application of the proper legal standard.

This Court finds that the ALJ erred in evaluating the severity of the claimant's impairments by failing to consider whether the combination of her physical and mental impairments meet or equal a listing and again erred in evaluating the

---

[81]       See 20 C.F.R. §§ 404.1545.

claimant's residual functional capacity by failing to take into account the combined impact of her impairments.  Those errors mandate remand of this matter for further review.

## G.   THE CLAIMANT'S PAIN COMPLAINTS

The claimant argues that the ALJ failed to properly evaluate her pain complaints.  The ALJ acknowledged that the claimant complains of chronic pain in her neck, shoulders, low back, and left knee, found that she has medical conditions that could reasonably be expected to cause chronic pain, but found that her statements concerning the intensity, persistence, and limiting effects of her pain were not entirely credible.  (Rec. Doc. 11-1 at 21).

Pain can constitute a disabling impairment,[82] but pain is disabling only when it is constant, unremitting, and wholly unresponsive to therapeutic treatment.[83]  Mild or moderate pain is not disabling.  Furthermore, subjective complaints, such as complaints of pain, must be corroborated by objective medical evidence.[84]  While an ALJ must take into account a claimant's subjective allegations of pain in determining residual functional capacity, the claimant must produce objective medical evidence

---

[82]     *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Cook v. Heckler*, 750 F.2d 391, 395 (5th Cir. 1985).

[83]     *Falco v. Shalala,* 27 F.3d at 163; *Selders v. Sullivan*, 914 F.2d at 618-19.

[84]     *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).

-25-

of a condition that reasonably could be expected to produce the level of pain alleged.[85]   The mere existence of pain does not automatically create grounds for disability, and subjective evidence of pain does not take precedence over conflicting medical evidence.[86]   The absence of objective factors can justify the conclusion that a witness lacks credibility.[87]

In this case, the evidence establishes – and the ALJ acknowledged – that the claimant has medical conditions that can cause pain.  However, the claimant testified at the hearing that her pain is responsive to medication.  Her medical records also contain instances in which she reported to her physicians that her pain is responsive to medication.  More particularly, she testified at the hearing that the length of time she can walk and the amount of time she can sit are both increased significantly when she takes her pain medication.[88]  Although the ALJ did not include chronic pain as a separate medical condition, the ALJ did not err in finding her pain complaints less than wholly credible.

---

[85]     *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989).

[86]     *Harper v. Sullivan*, 887 F.2d at 96.

[87]     *Dominguez v. Astrue*, 286 Fed. App'x 182, 187 (5th Cir. 2008), citing *Hollis v. Bowen*, 837 F.2d 1378, 1385 (5th Cir. 1988) (*per curiam*).

[88]     Rec. Doc. 11-1 at 41-43.

In particular, this Court finds that the ALJ was justified in finding that if the claimant's pain was as severe as she suggested, she would have made a greater effort to obtain treatment from a neurosurgeon in Shreveport.  This Court is aware that it is a tremendous burden on impoverished persons to have to travel to Shreveport to avail themselves of certain medical services provided free of charge or at a reduced charge by the State of Louisiana.  This Court would not fault the claimant for missing one appointment with the Shreveport neurosurgeon due to a lack of transportation to the appointment.   However, the reason she gave at the hearing for missing the appointment – a lack of transportation – is at odds with the reason she gave her treating orthopedist, which was that the neurosurgeon had canceled the appointment. This discrepancy does not help the claimant's credibility.  Further, this Court finds that if the plaintiff's pain was as severe as she contends, then it is likely that in the six years since she was first referred to the neurology department at UMC in Shreveport for a surgical consultation, the claimant would have been able to secure transportation and at least consult with a neurosurgeon.  Therefore, this Court finds that the ALJ's credibility determination is supported by substantial evidence in the record.

In summary, this Court finds that the ALJ properly evaluated both the claimant's pain complaints and her credibility concerning her pain complaints.

**H.**    **THE CLAIMANT'S RESIDUAL FUNCTIONAL CAPACITY**

As noted above, when addressing the claimant's residual functional capacity in his ruling, the ALJ concentrated on her alleged physical impairments but did not consider the combination of her alleged mental impairments along with her alleged physical impairments.  This error resulted in a residual functional capacity evaluation that was not reached by application of the proper legal standard, mandating remand for a more thorough analysis of the claimant's residual functional capacity.

### CONCLUSION AND RECOMMENDATION

This Court finds that the ALJ applied inappropriate legal standards in evaluating the severity of the claimant's alleged impairments and in evaluating the claimant's residual functional capacity.  Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned Magistrate Judge that the decision of the Commissioner be **REVERSED** and **REMANDED** to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) with instructions that the Commissioner again evaluate the severity of the claimant's alleged impairments and her residual functional capacity so that another determination can be made concerning whether she has been disabled since July 28, 2011.

-28-

Inasmuch as the reversal and remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA).[89]

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

---

[89]     See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir.1992), and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Signed in Lafayette, Louisiana, this 22nd day of June 2016.

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE